UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:05-cr-119-JMS-TAB-3 |
| ) | |
| DANNYE MCINTOSH, ) | |
| ) | |
| Defendant. ) | |

**ENTRY GRANTING MOTION FOR COMPASSIONATE RELEASE**

Defendant Dannye McIntosh has filed two motions seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkts. 60, 78. For the reasons explained below, his motions are **GRANTED**.

## I.
## Background

In 2005, a jury found Mr. McIntosh guilty of one count of conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§841(a)(1) and 846, and one count of possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§841 (a)(1)(b)(1)(viii), 846, and 851. Dkt. 1. During the course of the prosecution, the United States filed an Information under 21 U.S.C. § 851 alleging that Mr. McIntosh had previously been convicted of a felony drug offense, thus triggering enhanced penalties. Dkt. 1. According to the PSR, Mr. McIntosh and his co-defendants received a shipment of over 1000 pounds of marijuana from Mexico in Indianapolis, Indiana. Dkt. 84 at 4–5.

Mr. McIntosh faced a guidelines range of 360 months to life imprisonment. Dkt. 84 at 13. The Court sentenced him to 360 months of imprisonment followed by 8 years of supervised release. Dkt. 83-1 at 2–3. The Bureau of Prisons ("BOP") currently reports Mr. McIntosh's

anticipated release date (with good-conduct time included) as May 27, 2030. https://www.bop.gov/inmateloc/ (last visited July 26, 2024).

Mr. McIntosh filed a motion for compassionate release *pro se*. Dkt. 60. Thereafter, counsel appeared on Mr. McIntosh's behalf and filed an amended motion. Dkt. 78. Mr. McIntosh argues that he establishes extraordinary and compelling reasons for compassionate release through a combination of sentencing disparities affecting his sentence, a disparity between his sentence and that of his co-defendants, harsh conditions of confinement given his medical conditions and the COVID-19 pandemic, and his rehabilitation. *Id.* The United States has filed a response in opposition to the motion, dkt. 83, and Mr. McIntosh filed a reply, dkt. 89. The motions are now ripe.

For the reasons below, Mr. McIntosh's motions for compassionate release are **granted**.

## II.
## Discussion

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet, under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). On this point, the United States Sentencing Commission

2

recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023).

    **A. Extraordinary and Compelling Reasons for Release**

Mr. McIntosh argues that he establishes extraordinary and compelling reasons for release because a several factors combine to create an extraordinary and compelling reason for release. Dkt. 78. The United States Sentencing Guidelines permit a court to find extraordinary and compelling reasons where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Paragraphs (1) through (4) cover potential extraordinary and compelling reasons related to the medical conditions of the defendant, age of the defendant, family circumstances of the defendant, and where the defendant is a victim of abuse in the BOP. U.S.S.G. § 1B1.13(b)(1)–(4). The Government opposes Mr. McIntosh's claim that he has established extraordinary and compelling reasons for release on two grounds: (1) the Sentencing Commission exceeded its authority in promulgating § 1B1.13(b)(5) and the subsection is therefore invalid, *id.* at 20, and (2) even if § 1B1.13(b)(5) were valid, Mr. McIntosh's circumstances do not amount to an extraordinary and compelling reason for release, *id.* at 22.

        *1. Validity of § 1B1.13(b)(5)*

The United States argues that § 1B1.13(b)(5) of the Sentencing Guidelines is invalid because the Sentencing Commission exceeded its authority in promulgating this subsection. Dkt. 83 at 21. The Government contends that Congress required that the Sentencing Commission provide the "criteria to be applied" and "a list of specific examples" when promulgating guidance

to courts on what may be considered extraordinary and compelling reasons for release, *see* 28 U.S.C. § 994(t), and this subsection provides neither. Dkt. 83 at 21.

On the contrary, rather than functioning outside the authority provided by Congress, § 1B1.13(b)(5) fits squarely within the authority provided by Congress. First, § 1B1.13(b)(5) was itself approved by Congress. All amendments or modifications to the sentencing guidelines must be submitted to Congress and do not go into effect until at least 180 days have passed without modification or disapproval by Congress. 28 U.S.C. § 994(p). For that reason, Congress's tacit approval is required for any modification to the sentencing guidelines. *See id.* Section 1B1.13(b)(6) was submitted to Congress on April 27, 2023. https://www.ussc.gov/guidelines/amendments/adopted-amendments-effectivenovember-1-2023 (last visited July 26, 2024). Congress took no action to modify or disapprove of the amendment, and § 1B1.13(b)(5) went into effect on November 1, 2023. *Id.* Congress's tacit approval relieves any concerns that this subsection exceeds the authority Congress granted to the sentencing commission.

Next, Congress instructed the Sentencing Commission to describe circumstances in which extraordinary and compelling reasons for release exist and created one specific carveout prohibiting a court from finding the rehabilitation of a defendant alone to be an extraordinary and compelling reason for release. 28 U.S.C. § 994(t) ("The Commission, . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Congress made no other prohibitions on what may constitute extraordinary and compelling reasons for release. Congress could have issued a prohibition on a general category of "other reasons" creating extraordinary and compelling reasons for release but did not do so and chose to leave such

judgments to the Commission itself. *See Concepcion v. United States*, 597 U.S. 481, 483 (2022) ("Congress has shown that it knows how to direct sentencing practices in express terms.").

Lastly, any lack of specific examples in the guidelines does not bar this court from following the guidance of the sentencing commission. The Government has pointed to no cases in which any court has deemed this guidance from the Sentencing Commission to be invalid due to lack of specificity.[1] Indeed, even prior to the promulgation of § 1B1.13(b)(5), the guidelines commentary for the prior version of § 1B1.13 provided that "other reasons" may constitute extraordinary and compelling reasons for release where "there exists in a defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described [in prior subsections]." *See* https://www.ussc.gov/guidelines/adopted-amendments-effective-november-1-2023 (last visited July 26, 2024). This guidance was affirmed by the Seventh Circuit who left the parameters of an "extraordinary and compelling reason for release" within the District Judges' discretion constrained only by the warning that "a judge who strikes off on a different path [from § 1B1.13 as a working definition of extraordinary and compelling reasons] risks an appellate holding that judicial discretion has been abused." *United States v. Gunn*, 980 F.3d 1178, 118 (7th Cir. 2020). A district court's discretion to determine what constitutes extraordinary and compelling reasons constrained by the requirement of consistency with the sentencing commission's applicable policy statement has long been a part of the law on compassionate release even where the guidance allows for "other reasons" to constitute extraordinary and compelling reasons for release.

---

[1] Other Courts have relied on § 1B1.13(b)(5) in finding that extraordinary and compelling reasons for release exist and granting a motion for compassionate release. *E.g,, United States v. Kindle*, 2024 WL 1152519 (N.D. Ill. Feb. 23, 2024).

For these reasons, the Court declines to find that any failure to provide specificity in the guidelines renders § 1B1.13(b)(5) invalid.

### 2. Applicability to Mr. McIntosh

Mr. McIntosh argues that he meets the requirements of § 1B1.13(b)(5) because a number of factors related to his circumstances combine to establish a reason for release similar in gravity to other reasons listed in the guidelines by the Sentencing Commission. Specifically, he argues that a combination of sentencing disparities between the sentence for his marijuana-related conviction and the sentences given for violent crimes, sentencing disparities between him and his co-defendant, the conditions of his confinement given his prior diagnosis of prostate cancer, and his extraordinary rehabilitation combine to demonstrate that extraordinary and compelling reasons for his release exist.

Mr. McIntosh argues that the conditions of his confinement are dramatically worsened by his fear of dying of cancer given his diagnosis and subsequent successful treatment for prostate cancer. Dkt. 78 at 14–16. Despite the Government's suggestion that Mr. McIntosh has presented no evidence supporting his contention that he has been diagnosed with cancer, he has in fact presented such evidence in the form of his own testimony. Dkt. 78-5. Though this evidence alone does not demand the conclusion that Mr. McIntosh has a terminal condition or a condition that impacts his ability to provide self-care, receiving and living with any cancer diagnosis is a naturally frightening occurrence. The Court finds that Mr. McIntosh's prostate cancer diagnosis and the accompanying fears that his cancer may return and potentially result in his death may not alone constitute an extraordinary and compelling reason for release but may be similar in magnitude to

6

a diagnosis of a terminal illness if combined with other reasons and strongly tips the scales towards a finding that extraordinary and compelling reasons for release exist.

Mr. McIntosh next argues that the need to avoid unwarranted sentencing disparities both between Mr. McIntosh and other defendants and between Mr. McIntosh and his co-defendant contribute to establishing extraordinary and compelling reasons for release. As to his argument regarding his sentence and the sentences of other defendants, Mr. McIntosh argues that the sentence he received and is serving is more serious than defendants in other circuits and with more serious convictions have received and that is disparity contributes to a finding that extraordinary and compelling reasons exist. Dkt. 78 at 10. His argument essentially asks the Court to revisit his sentence in light of various changes to the legal landscape with regard to the sentencing scheme he would be subject to. *Id.* at 10–13. The Sentencing Guidelines permit a district court to find that a change in the law may demonstrate extraordinary and compelling reasons for release in the following circumstances:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b)(6). This provision must be read in tandem with subsection (c) as follows:

> Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

7

§ 1B1.13(c). Mr. McIntosh, however, asks the Court to find that changes in the law should be considered extraordinary and compelling under § 1B1.13(b)(5). The court is prohibited from doing so under § 1B1.13(c) as such changes may only be considered in a determination as to whether the defendant meets the requirements of § 1B1.13(b)(6). For that reason, the Court finds that changes in the legal landscape that may produce a disparity between the sentence Mr. McIntosh is serving and the sentence he may receive today is not a circumstance contributing to a finding of extraordinary and compelling reasons for release under § 1B1.13(b)(5).

With regard to correcting disparities between co-defendants, the Court notes that Mr. McIntosh's co-defendant received a lower sentence of 120 months, *United States v. Black*, 1:05-cr-00119-JMS-TAB-2, dkt. 13, and was released in 2015, https://www.bop.gov/inmateloc/ (last visited July 24, 2024). The difference between the co-defendants' sentences and Mr. McIntosh's sentence is stark, and an argument can be made that the co-defendant's conduct was more culpable.[2] Alone, this difference could not constitute an extraordinary and compelling reason for release, but the Court considers it to counsel strongly in favor of the existence of extraordinary and compelling reasons for release when viewed in light of the other reasons argued by Mr. McIntosh.

Mr. McIntosh last argues that his efforts towards rehabilitation help to demonstrate, in combination with other reasons, that extraordinary and compelling reasons for release exist. Rehabilitation alone cannot be an extraordinary and compelling reason to reduce his sentence. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d) (Nov. 2023); *United States v. Peoples*, 41 F.4th 837 (7th Cir. 2022) ("We cannot read § 3582(c) to permit good prison conduct and rehabilitation alone to override Congress's determinate sentencing scheme. . . . [R]ehabilitation cannot serve as a standalone reason for compassionate release.") (cleaned up). However, nothing prohibits the Court

---

[2] Because this disparity is not produced by any change in the law, § 1B1.13(c) does not prohibit the Court from considering this disparity.

from finding that rehabilitation contributes to a combination of reasons that establish extraordinary and compelling reasons for release. *See id.*

Mr. McIntosh's efforts towards rehabilitation are commendable. He has engaged in a substantial amount of programming focusing on both academic and practical topics. Dkt. 78-2 at 3. He will have the support of family if released and has secured a residence with his mother upon release. Dkt. 78-5 at 4. Most laudably, he has engaged in training to become a barber and wishes to open a barbershop of his own upon release. Dkts. 78-5; 78-2 at 3. Mr. McIntosh has placed himself in a position to be a productive member of society through an occupation he enjoys and finds rewarding. Dkt. 78-5. Because of these factors, the Court concludes that Mr. McIntosh has substantially rehabilitated himself while in the BOP and will likely enjoy a law-abiding and productive life post-incarceration. His rehabilitation, alongside other reasons, contributes strongly to finding that extraordinary and compelling reasons for his release exist.

For these reasons, the Court finds that Mr. McIntosh has established that extraordinary and compelling reasons for release under § 1B1.13(b)(5) because a combination of his cancer diagnosis, the sentencing disparities between Mr. McIntosh and his co-defendant, and his rehabilitation present circumstances similar in gravity to reasons detailed by the sentencing commission in § 1B1.13(b)(1) through § 1B1.13(b)(4).

### B. Danger to any Other Person or the Community

The Sentencing Guidelines specify that compassionate release is appropriate *only* where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Section 3142(g), which sets out the factors the court must consider in determining whether a defendant should be detained pending trial, guides

the court's release determination under post-incarceration circumstances as well. It is a familiar litany to every federal district court judge.

> **(g) Factors to be considered**.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>> **(2)** the weight of the evidence against the person;
>> **(3)** the history and characteristics of the person, including—
>>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. McIntosh's crimes were without a doubt very serious. He was participated in a large-scale conspiracy to transport large amounts of marijuana internationally to Indianapolis, Indiana, area. Dkt. 84 at 4–5. Additionally, his committed this offense while serving a term of supervised release and his criminal history includes a conviction for reckless homicide. *Id.* at 8–9. On the other hand, he has served nearly two decades for his offense, the most recent prior conviction in his criminal history is nearly three decades old, and his reckless homicide conviction is 35 years behind him. *Id.* For these reasons, the Court finds that Mr. McIntosh's release from incarceration to a term of supervised release will not pose a significant threat to the safety of any person or the public.

### C. Section 3553(a) Factors

Finally, the Court must consider whether the sentencing factors under 18 U.S.C. § 3553(a) weigh in favor of release. Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence[s] and the sentencing range established for—
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Weighing against Mr. McIntosh's request for outright release, as stated, his crimes were serious, and he has an extensive criminal history. However, as noted above, his criminal history is decades behind him. In addition, though the Court is concerned that his BOP disciplinary record includes a recent violation for possessing marijuana, any concern that this behavior would continue if released is strongly mitigated by the addition of the follow special condition of supervision:

> The defendant shall participate in a substance abuse treatment program at the direction of the probation officer, which may include no more than eight drug tests per month. The defendant shall abstain from the use of all intoxicants, including

> alcohol, while participating in a substance abuse treatment program. The defendant is responsible for paying a portion of the fees of substance abuse testing and/or treatment.

Further, Mr. McIntosh's accomplishments outweigh concerns resulting from his disciplinary history. As detailed above, his rehabilitation efforts are commendable. Further, he has served nearly two decades in prison which constitutes a significant portion of his sentence and a significant sentence for a marijuana related crime.

In light of these considerations, the Court finds that the § 3553(a) factors justify a reduction of Mr. McIntosh's sentence to time served. This sentence followed by an 8-year term of supervised release is sufficient but no greater than necessary to deter Mr. McIntosh from further criminal conduct, reflect the seriousness of his offense, provide just punishment, promote respect for the law, and to ensure the safety of the public from future crimes.

### III.
### Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court therefore finds that extraordinary and compelling reasons warrant a reduction of Mr. McIntosh's sentence of imprisonment to time served, that Mr. McIntosh does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his sentence reduction is consistent with the Sentencing Commission's applicable policy statements. The Court **GRANTS** Mr. McIntosh's motions for compassionate release, dkt. [60], [78], and **ORDERS** that Mr. McIntosh's sentence of imprisonment be reduced to **time served**. The term of supervised release remains 8 years. The terms of supervised release stated in the Judgment imposed on March 10, 2006, dkt. 83-1 at 3–4, remain in place with the following additional term:

> The defendant shall participate in a substance abuse treatment program at the direction of the probation officer, which may include no more than eight drug tests per month. The defendant shall abstain from the use of all intoxicants, including

alcohol, while participating in a substance abuse treatment program. The defendant is responsible for paying a portion of the fees of substance abuse testing and/or treatment.

Mr. McIntosh's USM Number is 05361-028. This Order is stayed for up to 14 days from the date of this Order, to make appropriate travel arrangements and to ensure the Mr. McIntosh's safe release. The BOP shall release Mr. McIntosh as soon as appropriate travel arrangements are made and it is safe for Mr. McIntosh to travel. There must be no delay in ensuring travel arrangements are made. If more than 14 days are needed to make appropriate travel arrangements and to ensure Mr. McIntosh's safe release, the parties shall immediately notify the court and show cause why the stay should be extended. **No later than 12:00 p.m. on August 15, 2024,** counsel for the United States is ordered to do the following: (1) transmit the contemporaneously filed AO248 Order to Mr. McIntosh's custodian; and (2) file a notice with the court confirming that transmission of the AO248 Order has occurred.

**SO ORDERED.**

Date: 8/1/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel